**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CORPORATE AMERICA FAMILY CREDIT UNION, an Illinois credit union, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 C 0238 |
| vs. | ) ) | Judge Darrah Magistrate Judge Nolan |
| FLATIRON FINANCIAL SERVICES INC., d/b/a Peak5, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES**
**TO COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Defendant Flatiron Financial Services Inc., d/b/a Peak5 ("Flatiron" or "Defendant"), by its undersigned counsel, answers the Complaint for Damages and Equitable Relief as follows:

**Summary of the Claims**

1.      This lawsuit concerns Flatiron's past unlawful retention of approximately $207,000 of CAFCU's funds, and its threat to unlawfully retain even more of CAFCU's funds in the future.  CAFCU is a not-for-profit credit union, and makes loans to its members.  Flatiron is in the business of servicing automobile loans for credit unions, including CAFCU.  Pursuant to a written contract between CAFCU and Flatiron dated February 23, 2007, certain of CAFCU's members who took out secured automobile loans from CAFCU make monthly principal and interest payments to Flatiron.  Flatiron agreed in a written contract to hold those payments in trust for CAFCU's benefit, as a fiduciary, and is required by the contract to remit them to CAFCU twice a month, minus

an agreed-upon loan servicing fee and any reimbursements of expenses to which it is entitled under the contract. In December 2007, Flatiron improperly retained a total of $207,089.76 of funds that it should have paid to CAFCU. Flatiron's stated reason for withholding these funds was that it was allowed to retain them as reimbursement of out of pocket costs and expenses incurred in servicing CAFCU's loans, but the contract between CAFCU and Flatiron does not allow for Flatiron to be reimbursed for the expenses it has claimed. Further, if it is not enjoined, Flatiron will continue to improperly withhold funds from CAFCU for reimbursement of expenses for which it is not entitled; based on Flatiron's actions in December 2007, CAFCU estimates that the amount of funds that Flatiron will improperly withhold in the future will be approximately $25,000 per month during 2008, and then lesser amounts each month over the life of the automobile loan portfolio.

**ANSWER:** Flatiron admits that the allegations in the first sentence of paragraph 1 identify concerns of the Plaintiff but denies the legitimacy of any of those concerns. Flatiron admits the truth of the allegations in the second and third sentences of paragraph 1. Flatiron admits that it entered into an agreement with CAFCU which provided the terms on which Flatiron would service the automobile loans made to CAFCU members. Flatiron denies the remaining allegations regarding its contract with CAFCU because they omit material terms of that agreement and render the allegations misleading. Flatiron denies the remaining allegations of paragraph 1.

## The Parties

2.     Plaintiff CAFCU is a not-for-profit credit union chartered by the state of Illinois. Its principal place of business is in Elgin, Illinois. CAFCU's deposits are federally insured, and CAFCU is therefore subject to regulation by the National Credit Union Administration ("NCUA"), as well as by the Illinois Department of Financial and Professional Regulation.

**ANSWER:**    Admitted.

> 3.    Defendant Flatiron is a Delaware corporation, and its principal place of business is in Colorado.

**ANSWER:**    Admitted.

### Jurisdiction and Venue

> 4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:**    Admitted.

> 5.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and damages giving rise to the claim occurred in this District, and because Flatiron is subject to personal jurisdiction in this District by virtue of doing business in this District.

**ANSWER:**    Admitted.

### Facts Common to All Counts

> 6.    On or about February 23, 2007, CAFCU and Flatiron entered into a Portfolio Servicing Agreement (the "PSA"), under which Flatiron manages, administers, services, and makes collections on a portfolio of secured automobile loans made by CAFCU to various of its members.  In return for its services, Flatiron is allowed to deduct a loan servicing fee from the amounts paid by CAFCU's borrowers.  (A copy of the PSA is attached hereto as Exhibit A.)

**ANSWER:**    Flatiron admits the truth of the allegations of paragraph 6 and states further that the PSA contains additional terms relevant to this dispute which are not described in paragraph 6.

> 7.    The PSA establishes that Flatiron is to hold funds that it receives from CAFCU's borrowers in trust for CAFCU's benefit, as a fiduciary for CAFCU.  Specifically, Section 3.01 of the PSA states as follows:

Trust Account.  All payments made with respect to the Receivables [amounts owed to CAFCU by its borrowers] shall be deposited in the Trust Account Depository.  All funds collected with respect to the Receivables, net of Servicer's [Flatiron] fees and out-of-pocket expenses, will be disbursed to Client [CAFCU] on or before the following Disbursement Date.  The Servicer shall hold funds in the Trust Account Depository in trust for the benefit of Client, as fiduciary. Servicer has no equitable or ownership interest in funds in the Trust Account Depository except to the extent Servicer is specifically entitled to payment from the Trust Account Depository as provided herein.

**ANSWER:**      Flatiron admits the truth of the allegations of paragraph 7 and states further that the PSA contains additional terms relevant to this dispute which are not described in paragraph 7.

8.      The PSA also requires Flatiron to disburse funds that it receives from CAFCU's borrowers to CAFCU twice a month, on contractually defined disbursement dates. Specifically, Section 2.09 of the PSA states as follows:

Disbursement Dates.  For the Collection Period dated from the 1st day of the month through the 15th day of the month, the Disbursement Date shall be the 25th day of the same month.  For the Collection Period date from the 16th day of the month through the final calendar day of the month, the Disbursement Date shall be the 10th day of the following month.  On each Disbursement Date, the Servicer shall disburse all amounts collected by the Servicer for Client on the Receivables and shall retain any amounts to which Servicer is properly entitled to reimbursement and which Servicer has earned as a servicing fee.  In addition, Servicer shall retain any amounts to which Servicer is properly entitled to reimbursement and which Servicer has earned as a servicing fee concerning the prior Collections Periods from the Trust Account.

**ANSWER:**    Flatiron admits the truth of the allegations of paragraph 8 and states further that the PSA contains additional terms relevant to this dispute which are not described in paragraph 8.

> 9.    Section 2.11 of the PSA governs Flatiron's right to be reimbursed for certain bona fide actual out of pocket costs and expenses incurred with respect to performing some of its duties under the PSA. Section 2.11 expressly states that under Section 2.08 of the PSA, Flatiron, and not CAFCU, is to bear the expenses of collecting all of the automobile loans in the portfolio, including defaulted loans. Section 2.11 further provides that CAFCU will reimburse Flatiron for certain enumerated expenses "if not recovered by Servicer [Flatiron] from the Obligor or in Liquidation Proceedings." This means that Flatiron must bear the costs of collection as they are incurred, and may only charge CAFCU for reimbursement of those expenses once it has exhausted all other forms of reimbursement, including repossession and sale of the financed automobile.

**ANSWER:**    Flatiron admits that Section 2.11 of the PSA is one of the paragraphs which governs Flatiron's right to be reimbursed. Flatiron denies the remaining allegations in paragraph 9 because they omit material aspects of the PSA which make the description of the PSA in paragraph 9 misleading.

> 10.    Section 2.08 of the PSA contains provisions concerning the collection of balances due from defaulting borrowers that are not recovered after the repossession and sale of a financed vehicle (which the PSA refers to as a "Deficiency"), or balances due from defaulting borrowers when a financed vehicle cannot be located for repossession, and CAFCU instructs Flatiron to charge off the amounts owed (which the PSA refers to as a "Unsecured Receivable Balance"). Under Section 2.08(d), CAFCU has the option, upon notice to Flatiron, of collecting those amounts itself. Section 2.08(d) refers to this option as the "Client Deficiency Collection Option". CAFCU has never exercised this Client

Deficiency Collection Option with respect to any loan
serviced by Flatiron.

**ANSWER:**     Admitted.

11.     Section 2.08(e) of the PSA governs the collection by
Flatiron of Deficiencies and Unsecured Receivable
Balances in the event that CAFCU does not exercise the
Client Deficiency Collection Option.   Under Section
2.08(e), Flatiron is to collect these amounts, and is
entitled to keep 50% of the amounts collected, but
CAFCU is expressly not required to reimburse Flatiron
for any of the expenses it incurs in collecting them.
Section 2.08(e), in its entirety, states as follows:

> If Client does not exercise its Client Deficiency
> Collection Option with respect to a Deficiency on
> a Receivable or an Unsecured Receivable
> Balance, the Servicer shall promptly pursue
> collection of the Deficiency or Unsecured
> Receivable Balance on behalf of Client (if
> permitted by applicable law).   Servicer shall be
> entitled to 50% of all amounts collected with
> respect to such Deficiency or Unsecured
> Receivable Balance, but Servicer shall bear all
> expenses of collection of the Deficiency or
> Unsecured Receivable Balance, including court
> costs and attorney fees if litigation is commenced
> (and Client shall not be required to reimburse
> Servicer under Section 2.11 for any costs and
> expenses in pursuing the Deficiency or Unsecured
> Receivable Balance).

**ANSWER:**     Flatiron admits that CAFCU correctly quoted Section 2.08(e) of the contract

and denies any remaining allegations that characterize that provision in a manner that is

inconsistent with the PSA.

12.     On December 20, 2007, Flatiron sent CAFCU an e-mail
in which it announced its intention to deduct
$179,806.73 from its distribution due to CAFCU on
December 26, 2007.   Flatiron represented that this
amount represented "outstanding out-of-pocket costs and
expenses (Repossession, Legal, Vendor, etc.), incurred

on your behalf in servicing loans in your portfolios" that were incurred prior to November 30, 2007. Flatiron did in fact deduct $179,806.73 from its December 26, 2007 payment to CAFCU, in addition to its loan servicing fee.

**ANSWER:**     Admitted.

13.    Attached to Flatiron's December 20, 2007 e-mail was an electronic spreadsheet that listed the $179,806.73 in costs and expenses that Flatiron deducted from the amounts due to CAFCU on December 26. None of the $179,806.73 in costs and expenses listed on the spreadsheet and deducted by Flatiron from the December 26 payment were properly deducted from the amounts due CAFCU pursuant to the terms of Section 2.11 of the PSA. In fact, the large majority of these expenses predated the commencement of the PSA, and would have been incurred, if at all, by the company that preceded Flatiron as the servicer of CAFCU's portfolio of automobile loans. Further, all of the listed costs and expenses were incurred by Flatiron in the collection of Deficiencies and Unsecured Receivable Balances. Therefore, under Section 2.08(e) of the PSA, Flatiron is not entitled to reimbursement of these expenses from Flatiron.

**ANSWER:**     Flatiron admits the truth of the allegations in the first sentence of paragraph 13. Flatiron admits that the majority of the $179,806.73 in expenses were initiated on behalf of CAFCU prior to the February 23, 2007 PSA by a loan servicer that preceded Flatiron. Flatiron denies the remaining allegations of paragraph 13.

14.    In addition, Flatiron has improperly, and in breach of Section 2.11 of the PSA, begun to charge CAFCU for collection expenses as it incurs them, instead of waiting to seek reimbursement after the completion of Liquidation Proceedings. Specifically, Flatiron deducted $17,280.75 in purported costs and expenses from its disbursement to CAFCU on December 10, 2007, and an additional $10,002.18 in purported costs and expenses from its disbursement to CAFCU on December 26, 2007. Both of these deductions were in addition to Flatiron's loan servicing fee. Flatiron was not entitled to deduct

any of these amounts under the terms of Section 2.11 of the PSA, because, even if such expenses might have otherwise been subject to reimbursement, Flatiron has not completed Liquidation Proceedings (as that term is defined in Section 1.11 of the PSA) for the loans in question.

**ANSWER:**    Denied.

15.    Unless Flatiron is enjoined, Flatiron will continue to make improper deductions under the PSA from the amounts it is required to remit to CAFCU. CAFCU estimates that the amounts of these improper deductions will be approximately $25,000 per month.

**ANSWER:**    Denied.

## Count I – Breach of Contract

16.    CAFCU repeats and realleges the allegations made in Paragraphs 1-15 as though fully set forth herein.

**ANSWER:**    Flatiron repeats and realleges its answers to the allegations in paragraphs 1-15 as though fully set forth herein.

17.    CAFCU and Flatiron entered into the PSA, a valid and binding contract. CAFCU continues to perform its obligations under the terms of the PSA.

**ANSWER:**    Flatiron admits the truth of the allegations in the first sentence of paragraph 17. Flatiron denies the remaining allegations in paragraph 17.

18.    Flatiron breached and defaulted on the PSA by (a) improperly withholding over $207,000 in funds received from CAFCU's borrowers that it was required to remit to CAFCU; (b) indicating through its actions that it would retain, in future months, additional amounts for purported reimbursement of costs and expenses that it is not entitled to withhold under the terms of the PSA; (c) failing to hold funds in the Trust Account in trust for the benefit of CAFCU; and (d) asserting an unwarranted equitable or ownership interest on funds in the Trust Account.

**ANSWER:**    Denied.

19.    CAFCU has been damaged as a result of Flatiron's breach of the PSA in an amount in excess of $207,000. Further, CAFCU will be damaged in additional amounts twice each month thereafter if Flatiron continues to deduct collection costs and expenses which it is not entitled to deduct under the terms of the PSA.

**ANSWER:**    Denied.

20.    Flatiron's breach has caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damages to CAFCU.  Further, CAFCU lacks an adequate remedy at law.

**ANSWER:**    Denied.

## Count II – Breach of Fiduciary Duty

21.    CAFCU repeats and realleges the allegations made in Paragraphs 1-15 as though fully set forth herein.

**ANSWER:**    Flatiron repeats and realleges its answers to the allegations in paragraphs 1-15 as though fully set forth herein.

22.    In the PSA, Flatiron agreed to act as trustee for the Trust Account, and to hold the funds in trust for the benefit of CAFCU.  As Flatiron acknowledged, this agreement gave rise to a fiduciary obligation owed by Flatiron to CAFCU with respect to the funds in the Trust Account.

**ANSWER:**    Flatiron admits the allegations of paragraph 22 but further states that the allegations on the issues described are incomplete and misleading because they omit material terms of the PSA.

23.    Flatiron breached this fiduciary duty by (a) improperly withholding over $207,000 in funds received from CAFCU's borrowers that it was required to remit to CAFCU; (b) indicating through its actions that it would retain, in future months, additional amounts for purported reimbursement of costs and expenses that it is

not entitled to withhold under the terms of the PSA; (c) failing to hold funds in the Trust Account in trust for the benefit of CAFCU; and (d) asserting an unwarranted equitable or ownership interest on funds in the Trust Account.

**ANSWER:**     Denied.

24.     CAFCU has been damaged as a result of Flatiron's breach of its fiduciary duty in an amount in excess of $207,000.     Further, CAFCU will be damaged in additional amounts twice each month thereafter if Flatiron continues to deduct collection costs and expenses which it is not entitled to deduct under the terms of the PSA.

**ANSWER:**     Denied.

25.     Flatiron's breach has caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damages to CAFCU.  Further, CAFCU lacks an adequate remedy at law.

**ANSWER:**     Denied.

### Count III – Declaratory Judgment

26.     CAFCU repeats and realleges the allegations made in Paragraphs 1-15 as though fully set forth herein.

**ANSWER:**     Flatiron repeats and realleges its answers to the allegations in paragraphs 1-15 as though fully set forth herein.

27.     An actual and bona fide controversy within the jurisdiction of this Court exists with respect to Flatiron's future retention of costs and expenses.

**ANSWER:**     Flatiron denies these allegations because they state legal conclusions rather than facts.

28.     All parties necessary for a determination of the parties' rights, duties, and legal liabilities have been joined in this action.  CAFCU is entitled to a declaration of its rights.

**ANSWER:**    Flatiron denies these allegations because they state legal conclusions rather than facts.

> 29.    CAFCU is entitled to a declaration that (a) Flatiron is entitled to deduct from amounts it owes to CAFCU only expenses and costs that it incurred itself, and not those incurred by its predecessor; (b) Flatiron is entitled to deduct from amounts it owes to CAFCU only those costs and expenses expressly enumerated in Section 2.11 of the PSA; and (c) Flatiron is only entitled to deduct those costs or expenses that remain unrecovered or reimbursed after the completion of Liquidation Proceedings.

**ANSWER:**    Denied.

## AFFIRMATIVE DEFENSES

Flatiron reserves the right to assert affirmative defenses that emerge during the discovery process.

WHEREFORE, Defendant Flatiron Financial Services Inc., d/b/a Peak5 respectfully requests that the Court enter a judgment in its favor and against Plaintiff as follows:

> (a)    dismissing Plaintiff's Complaint for Damages and Equitable Relief with prejudice; and

> (b)    granting Defendant Flatiron Financial Services Inc., d/b/a Peak5 such other and further relief as the Court deems just and proper.

Dated:  April 30, 2008

FLATIRON FINANCIAL SERVICES INC.,
d/b/a Peak5


By  /s/ David J. Chizewer                            
    One of Its Attorneys

David J. Chizewer
GOLDBERG KOHN BELL BLACK
 ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on April 30, 2008, he caused a true and correct copy of Defendant's **ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** to be served via the Court's ECF/electronic mailing system upon the following:

> Jeffrey H. Bergman
> Seth A. Horvath
> Ungaretti & Harris, LLP
> 3500 Three First National Plaza
> Chicago, Illinois  60602

/s/ David J. Chizewer
David J. Chizewer